United States District Court　　　Southern District of Texas

Ken D. Caldwell, § 
　　　　　§
　　　Plaintiff, §
　　　　　§
versus § Civil Action H-07-2473
　　　　　§
Union Pacific Railroad, §
　　　　　§
　　　Defendant. §

## Opinion on Summary Judgment

1.　*Introduction.*

An employee was demoted, denied a mechanic's position, and eventually fired. The railroad said that it did these things because of poor performance and attitude. He claims the employer either discriminated against him on the basis of race or retaliated against him for filing a discrimination complaint. The employer wins.

2.　*Background.*

Ken Caldwell sues the Union Pacific Railroad for discrimination based on race and unlawful retaliation. Caldwell is black; he began working as a trackman for Union Pacific in 1991. Trackmen inspect, install, and maintain railroad tracks.

In March of 2004, Union Pacific fired Caldwell for insubordination. When an employee breaks conduct rules, a citation is issued with a number ranging between one and five. When an employee accumulates a disciplinary level of five, he is fired. Insubordination is a level-five offense. In May of 2005, Caldwell was reinstated by a Public Law Board with no backpay and with a level-three disciplinary status.

In January of 2006, Caldwell sought and earned a position as a foreman. His supervisor – also black – demoted him four months later for problems with Caldwell's performance and attitude. Caldwell claims that the railroad's reason for the demotion was to retaliate against him for filing a discrimination complaint against the company in 2002.

In June of 2006 – two months after his demotion – he applied to become a mechanic. The supervisor chose not to hire him for the position. Instead, he selected Christopher Harvey,

an employee with less tenure and who happened to be Caucasian. Caldwell claims that Union Pacific's denial of the position constituted either discrimination on the basis of race or retaliation for his discrimination complaint.

In August of 2006, Caldwell received two level-one citations: one for being absent and one for not following instructions. Since Caldwell reentered Union Pacific with a level-three status, this brought his total to five; he was fired. He claims that his termination was illegally discriminatory. He says another employee – a Caucasian – was fired after committing a level-five offense but was reinstated without a level assessed.

Union Pacific moves for summary judgment, because it had legitimate reasons for its actions: Caldwell was demoted because of performance and attitude problems; he was denied the mechanic's position because he had previously been disqualified from a mechanic or mechanic helper's job; and he was fired because he had accumulated a disciplinary level of five. It also denies retaliating against Caldwell. It says that neither the person that denied him the mechanics job, nor the person that demoted him from foreman knew of the discrimination complaint he filed in 2002.

3.  *Discrimination.*

Federal and Texas law make it unlawful for an employer to discriminate on the basis of race when deciding terms of employment.[1]

The employee has the initial burden of showing race discrimination.[2] He satisfies this burden by showing that (a) he is a member of a protected class; (b) he was qualified for the position; (c) he suffered an adverse employment action; and (d) he was replaced by someone outside the protected class,[3] or was treated differently from others similarly situated.[4]

Once the employee makes the initial showing, the burden shifts to the employer to

---

[1] 42 U.S.C. §2000e-2(a)(1); Tex. Labor Code Ann. § 21.051 (2006)

[2] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

[3] *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 513 (5th Cir. 2001).

[4] *McGaughey v. SBC Commun's.,* 2006 U.S. Dist. LEXIS 39412, *21 (citing *Abarca Metropolitan Transit Auth.,* 404 F.3d 938, 941 (5th Cir. 2005)).

articulate a legitimate explanation for its decision.[5] If it is successful, the burden shifts back to the employee to show that the stated reasons were a pretext to discrimination.[6] Even if an employee establishes a showing and can prove the falsity of an employer's explanation, this still may not prevent summary judgment.[7]

### A. Denial of Mechanic's Position.

The supervisor of the mechanic's position testified that he rejected Caldwell because he believed Caldwell had been disqualified from a mechanic or mechanic helper's job in the past.[8] This is a legitimate reason for the decision, and it requires Caldwell to show that this is merely a cover for a discriminatory reason.

Caldwell is unable to support his legal posturing. He admits having been disqualified from a mechanic's apprenticeship,[9] but denies that he was ever disqualified from a mechanic or mechanic's helper job. That distinction is immaterial, at least for purposes of deciding whom to hire for a mechanic's opening; a mechanic's apprenticeship is closely related to being a mechanic.

The supervisor's knowledge of Caldwell's disqualification could reasonably weigh heavily in his decision. Aside from Union Pacific's legitimate reasons for not considering Caldwell, there is evidence that supports its choice of Harvey.

Caldwell claims that he had more tenure at Union Pacific than Harvey, and that this shows Union Pacific's choice could not have been legitimate. Tenure might be a factor in deciding who should get the mechanic's position, but it is not dispositive. For instance, Harvey had a background that was conducive to learning mechanical skills, including regular repairs to his truck.[10] Also, no other employee who had been disqualified from a mechanic's apprenticeship – of any race – was hired. Caldwell has not presented evidence that other,

---

[5] *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003)

[6] *See Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001).

[7] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

[8] (Docket No.10, Prichard Aff., Attach. 3, 1.)

[9] (Docket No. 11, Caldwell Dep., Ex. A. 35:12-15.)

[10] (Docket No. 10, Prichard Aff., Attach. 3 2.)

similarly situated employees outside the protected class were treated more favorably.[11]

### B.  Termination.

Caldwell fails to show that his termination had a racial component. Caldwell was disciplined twice in August of 2006, for being absent without authority and for failing to follow instructions.[12] These were level-one offenses. Since he reentered Union Pacific in May of 2005 with a level-three disciplinary status, these citations brought his status to five – the level at which employees are terminated.

Caldwell does not contest these citations. Rather, he claims that his firing only occurred because he was unfairly reinstated with a level-three status. He points to another, Caucasian employee – Mike Houser – who was supposedly fired and then reinstated without any level assessed. Even assuming this is true, he has failed to establish that he was treated differently from a similarly situated person outside of the protected class.

Caldwell has not shown that Houser – like Caldwell – was fired and then reinstated by a Public Law Board with no back pay. He does not assert that the Union Pacific employee responsible for firing Caldwell was involved in any way with the hiring or firing of Houser. Too many variables could explain the supposed difference in treatment between them. Caldwell has not shown that Union Pacific discriminated against him on the basis of race when it denied him the mechanic's position or terminated him from employment. Regardless, he may not relitigate his reinstatement. He accepted it long ago.

### 4.  Retaliation.

Caldwell argues next that Union Pacific retaliated against him for filing a complaint in 2002, by: (a) demoting him from foreman, (b) denying him the mechanic's position, and (c) terminating his employment. To establish an initial case of retaliation, a plaintiff must show that (a) he engaged in a protected activity, (b) he suffered an adverse employment decision, and (c) a causal link exists between the protected activity and the employment decision.[13]

---

[11] *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001).

[12] (Docket No. 7, Joint Chronology of the Parties 1.)

[13] *Septimus v. Univ. of Houston,* 399 F.3d 601, 610 (5th Cir. 2005) (citing *Pineda v. United Parcel Servs., Inc.,* 360 F.3d 483, 487 (5th Cir. 2004)).

Once the worker has established an initial case, the burden shifts to the employer to offer a legitimate reason for its decision.[14] If it succeeds, the burden shifts back to the employee to show that the employer's stated reason was false to mask retaliation.[15] He must show that the employment decision would not have occurred but for the employee's protected conduct.[16]

Daniels testified that Caldwell was demoted because of performance issues and his belligerent attitude towards his workers.[17] Specifically, Caldwell mismanaged the work, causing train crews to exceed their maximum work hours.[18] Caldwell does not dispute this. Also, the four years between the two acts make Caldwell's theory wholly implausible; in any event, the details of the complaint have not been disclosed.

### A.   Demotion from Foreman.

Caldwell cannot show that he was demoted from the job of foreman in 2006, in retaliation for filing a discrimination complaint in 2002. The supervisor who ordered the demotion, Terrence Daniels, was unaware of Caldwell's complaint.[19] Daniels could not have retaliated against Caldwell for filing a complaint about which he had no knowledge.

Caldwell says that Daniels told him that he "had heard about him" because of his frequent calls to the union. Caldwell wants us to infer from that statement that Daniels knew about the complaint filed in 2002. This requires a leap in logic; Daniels could have been referring to any number of things he had heard about Caldwell that were unrelated to his 2002 complaint.

### B.   Mechanic's Position.

Like Daniels, the supervisor responsible for denying Caldwell the mechanic's position

---

[14] *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004).

[15] *Id.*

[16] *Septimus,* 399 F.3d at 608.

[17] (*Id.* at 1.)

[18] (*Id.*)

[19] (Docket No. 10, Daniels Aff., Attach. 2 2.)

was unaware of Caldwell's complaint in 2002.[20] Caldwell presents no evidence to the contrary; his assertions and suppositions are not facts.[21]

### C. Termination.

Caldwell was terminated from the Union Pacific because his discipline level was five, and Union Pacific fires employees when their status reaches five.[22] Caldwell does not contest this. He also does not contest either of the level-one offenses that brought him to five. He does not dispute that the supervisor responsible for firing him was unaware of Caldwell's complaint in 2002.[23] Caldwell cannot establish that Union Pacific fired him in retaliation.

### 5. Conclusion.

Caldwell was a difficult employee – insubordinate and ineffectual – for many years. Transfers and suspensions did not change his behavior. After mangling his reinstatement, he blames everyone but himself. Worse, he has caused the railroad, government agencies, and union to spend more than a year's wages for a good worker in responding to his litigious victimhood. He harms those workers who may have had a supervisor hostile to them because of their color by clogging the courts and agencies and by eroding public confidence in our commitment to equal justice.

Caldwell's claims of race discrimination and unlawful retaliation fail. Ken Caldwell will take nothing from Union Pacific Railroad.

Signed on August 12, 2008, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[20] (Docket No. 10, Prichard Aff., Attach. 3 2.)

[21] *See Bates v. James,* 2004 U.S. Dist. LEXIS 22075, *13-14 (N.D. Tex. Oct. 29, 2004).

[22] (Docket No. 10, Fisher Aff., Attach. 4 1.)

[23] (*Id.* at 2.)